0465 CHY Investments, LLC, Appellant by Joseph Ryan v. Victor Hsing, Appellate by Randy Saber. Thank you. Good morning, Mr. Ryan. Good morning, Justices. Joseph Ryan of Appellate, CHY Investments, LLC. The decision of this trial court by Judge Fulton is unprecedented. Never has an Illinois appellate or Illinois Supreme Court case held that there's been a due process violation where a party having interest in the property has been named in the tax deed proceedings and has been attempted service. There are numerous attempts to service for Hsing in this matter, including multiple attempts by certified mailing. If you just look at the mailings, the U.S. Postal Office placed eight notifications that there were certified mailings available in the mailbox at the Stockton property address. Two of those were specifically addressed to Mr. Hsing. One was sent by the process server. One was sent by the circuit court clerk. There also were two that were placed in there that were addressed to the occupant, one by the process server, one by the circuit court clerk. And the process server and the circuit court also sent certified mailings to that property to two individuals that had rented the property from Mr. Hsing. Mr. Hsing was perfectly happy with accepting mail at the Stockton property. He let it be known that this is the address where he wanted his mail sent. When he bought the property in 1998, he indicated the treasurer sent the tax bills to my attention at the Stockton property address in Aprilville. And that's what they did for over a decade. Mr. Hsing accepted those tax bills, never completed the change of address form on the back of the tax bill, accepted the tax bills, paid the taxes, and worked out perfectly happy. If he changed his address at any point in time in the 20 years that he owned the property, we wouldn't be here today. Mr. Hsing was fine with having his friend, Frederick Paugh, pick up his mail a couple times a month and forward it to him in California for over a decade. But then this process becomes unacceptable when we try to serve him, as EHY tries to serve him, with certified mailings at the same address where he wants his mail sent. But we're not, our due process satisfication of constitutional requirements doesn't end with just the mailings. There's far more attempts to serve Mr. Hsing. The property tax code in Illinois specifies a procedure by which you can eventually acquire a tax deed. The county collector must send out a notice to the tax assessee, in this case Mr. Hsing, at the property address before the sale is even conducted. There's also a notice placed in the paper of general circulation. The tax sale is conducted, the taxes are sold. The tax buyer must then take what is commonly referred to as the 22-5 take notice, give that to the county clerk, suggest to the tax assessee, which in this case is Mr. Hsing again, and the county clerk sends that within four months and 15 days of the sale to that individual. But that notice, those notices don't stop there. Two and a half years later, we have what is commonly referred to as the 22-10 take notice, where you try to personally serve the individuals that have an interest in the property within the county that the property is located, and if they're outside the county, you send certified mailings. And there's also a publication placed in a paper of general circulation. So there are all these statutory notice requirements, and all of those, it seems to me, were complied with religiously. But we're talking about constitutional due process, which I think the case law would support generally this concept that complying with all these statutory requirements doesn't necessarily, at least, equate with what's required under due process. So the question I would have for you is, Mr. Hsing is fully aware nobody's living at this property, and it's not regular mail that's being sent to this property. It's certified mail, which requires somebody to go do something, and there's nobody there, and everybody knows nobody's there. So why doesn't due process require something more than what is statutorily required? And then I'm going to just ask you to address Judge Fullerton's observation that, you know, a lot of these cases, Jones and Lowe, et cetera, they all are at the beginning, if you will, of what we all know and understand is the Internet. But while this is going on, if you put in Mr. Hsing's full address with his middle initial, in about one second you get the address that he lives in in California, and why doesn't due process require something to be mailed to him at that address? It's not like his name's John Smith and there's 5 million of them in the United States. There are multiple questions here. I hope I'm going to get a lot. You know what? I apologize. Now that it's halfway through that I thought I should shut up. But in any event, I think you know the gist of my question. Right. Okay. I'll try to address them. If I miss anything, I'm sure you'll let me know. First of all, I would disagree. I think that if you comply with the statutory steps in the property tax code, that satisfies due process. Now there may be another issue about due diligence and what you did in due diligence, but that would not be a due process argument. That would be an argument on the fraud and whether you're entitled to a tax deed, which I'll be happy to address when we get to that argument. But for the due process argument, if you follow the procedures of the Eleanor Property Tax Code, you have not only satisfied, you've exceeded due process. And that's true if you look at Lowe, Lowe 1, Lowe 2, and also DGA Enterprises, which is a more recent case. Because in Lowe, if you think about it, the sheriff went out and tried to serve an individual that was hospitalized for suffering from schizophrenia. You figure that's got to be the most sympathetic case you could probably have. Sheriff tries, it's vacant. The tax buyer still sends out certified mailings through the sheriff and the circuit court knowing that it's vacant and was issued a tax deed. And the Supreme Court upheld that tax deed. Despite the fact, if you look in Lowe 1, the trial court judge signing an affidavit saying, hey, if I had known that this individual was hospitalized, I would have never issued a tax deed. The Supreme Court in Lowe's situation still held that the tax buyer was entitled to a tax deed. Now, your question also is about more advancement like the Internet searches. DGA Enterprises is a more recent case within, I think, the last 10 years or so. Obviously, the Internet's been around. And in that case, it went even farther. It analyzed not only Jones v. Flowers and the two Lowe decisions, but DGA Enterprises, where there was no notice given whatsoever received by the homeowner, they upheld the issuance of the tax deed. And in that specific case, it was argued, it specifically held the Internet name search was not required. The homeowner argued for an Internet search. It would have been very easy if you did an Internet search. The Supreme Court says that's not required. Contacting the neighbors is not required. Sending regular mail is not required. Posting a notice at the property is not required. The DGA Enterprises case by the Supreme Court filed the Supreme Court precedent in Law 1 and 2 saying all those items are open-ended searches. They're not constitutionally required. And as I said, I'll get to the due diligence, which I think also involves part of your inquiry. Continuing on that thing, Mr. Ryan, the Internet search, where did that come into the record? Is that something that the judge said? He had done, or is that something that was testified to by one or the other? Yeah. You know, this is a problem that I personally have for the Department of the United States with the child court's finding. The child court held that there was no Internet search name done, and that is blatantly incorrect. What was signed in Answers to Interrogatories, what the judge thought, there was inconsistency. The trial judge said, in the Answers to Interrogatories, you said there was a name search. And that was signed under oath. But in your deposition of Christine Perrakis, you said there wasn't a name search. Well, he didn't put the pieces of the puzzle correctly together. There definitely is an Answer to Interrogatory Number 9 saying that Christine Perrakis performed a name search. Clear as a bell, under oath. So that's uncontroverted. That was signed. Was that a white pages name search? No, that's what happened. The question was asked for white names. She added that in because if you don't put everything in, then people complain that you were sandbagging. But in her deposition, she explained that sentence in the Answers to Interrogatories. She says, my searches usually start with white pages using the reverse address search. But after that, I go further and do additional due diligence. And that includes a Google search or using an Internet browser other than white pages because it has a broader search. You can find out if people are in jail, whether a property was burnt down, whether a crime was committed, deaths in the family. You can then look up obituaries and find out years that are maybe entitled to notice. So the Internet search, using like Google, for example, is more important. And she specifically said at her deposition, since counsel is asking her about the due diligence, and she's going through the white page search, reverse searches. At C-1953, she asked, you know, you're doing searches of the county clerk, the treasurer, recorder, and white pages. And Christine Perattis says yes, and then quote. And like I said, I did a Google search, even a property, or address, to see what comes up. I'm sorry. And I did a Google search without even a property address to see what comes up. I had inserted the word address to make it clearer. So she clearly says right there, I did a Google search, a name search. Now, if you look at the very end of the deposition, I ask a question. However, is it your practice and custom to do an Internet search using the names of individuals such as the owner of the house? She answers, that's correct. Since counsel, and that is on C-2016. I'm going to C-2019. Since counsel gets up and says, so there's a discrepancy in your testimony from answering yes to Mr. Ryan, that's custom and usage that you always search for a name versus what you stated earlier in the deposition, is that you use the property address and only do an additional search for a name if something comes up. That would attract your attention. So she's asking right there, really in her depth, you're talking about white pages? Question from Mr. Ryan, you mentioned Google. Ms. Perattis, in answering that and clarifying, says, if I recall correctly, your questions, meaning seeing counsel's questions, were talking about white pages searches. And she goes on. I think Mr. Ryan asked me about Internet searches. Since counsel says, thank you for clarifying, because you were referring to the Google searches that you referenced, not the white pages searches, correct. So if you put this puzzle together, you'll see that she did do white pages search for reverse property addresses. She does her due diligence, but she uses a name search for an Internet browser such as Google, which is a broader search and provides more information. And she testified repeatedly in her deposition that she doesn't print out everything in her search. You see our VATDs are pretty thick. The reason why is it being bigger. But if there's any additional information that's uncovered in the search package, then she prints it out. Mr. Ryan, what was that you were just reading from? I should have asked you. Oh, there's a common law record. I'm sorry. Yeah, what was it? 1953 is what you gave for a site before. I'd like to hear it. I have another couple questions for you. Sure. The pages were 1653 to 1954. And then 2019 through 2020. Thank you. The common law record. I'm going to cut to the chase here because I see the orange light is on. How unusual was it for the taxes to be paid by the actual owner in the middle of the process of going to deed? And secondly, what did you do wrong or what did you do right in not following through on that? First, I do not have an answer statistically how many people pay taxes, but it does happen. Not as part of an industry record, but taxes get redeemed. Sometimes they pay and then if they don't pay, you get the post-subsequent taxes. We just pay whatever we can. We go to the treasurer's office, as explained in the transcripts, and whatever the treasurer says is open, we end up paying. To answer your question, though, about what was done wrong, absolutely nothing. Because the question about whether taxes are paid, it really is an issue that comes up when the tax deed is going to be requested to the court to issue the order granting a tax deed. One of the requirements is that all taxes have been paid, all forfeitures have also been paid by the taxpayer. So you don't have to necessarily research any taxes. What happened was it was mistaken on her part that she thought we paid all three sub-taxes. It turns out that we didn't. But here's the point. I think even if we did research, let's say we want to look at it. We would have looked into it and what would we find out? It was Mr. Singh. Mr. Singh paid the taxes. From an address in California. Well, I'm going to break this down into two parts. Initially, if you look on the website, there's no indication he pays the taxes. If you picked up the phone and said to the treasurer, who paid the taxes, they would say they don't know. Because there's nothing on the internal records to indicate who paid the taxes at the treasurer's office. But we probably can surmise that it was Mr. Singh. Because if you do look on the county website, which is a document that's provided for trial court, it usually says paid or it says tax sale. And because the 2015 just showed that it was paid, it would be an inference that it was paid by the homeowner. It could have been paid by somebody else, like a neighbor or something. But it indicates it was paid and it wasn't as part of the tax sale process. It wouldn't have been us. So if we did call up and somehow find out it was Mr. Singh, Mr. Singh is already part of the proceedings. We already have his name. So he would be not an initial party that we would be trying to serve. I think what you're getting at is the argument about the canceled check. That canceled check is not readily available to the tax buyer. That check is sent into a third party box maintained by the bank. Even the treasurer's office, if they wanted to find out who paid the taxes, wouldn't be able to do it from their internal records or computer records or anything they have at their facility. They'd have to contact the bank and get a copy of the canceled check. So it's not readily available to anybody. I'm not aware of anybody in the 20 years I've been doing this that gets canceled checks. But even if I did ask for a canceled check, the most probable way of doing that would be through a FOIA request. Because you want to have some documentation and some ability to force the treasurer to respond to your request rather than just filing it in a waste paper basket. And if you send in that FOIA request, the FOIA app specifies that home addresses and personal information have to be redacted. So if they filed FOIA law and they did give me the canceled check pursuant to a FOIA request, they would have taken out and redacted the California address. Mr. Ryan, was there some testimony in the record regarding an attempt by, I believe, Mr. Singh to contact them, and they readily gave the – Mr. Singh's attorneys to contact them, and they readily gave the information? That was set forth in the briefs, but I think there's two problems with that argument. It's in the record, I guess, is my question. Yeah, I don't recall any evidentiary foundation for that, but I could be wrong. But even if that's true, let's look at the practical effect of it. I understand it's his attorney that would – Yeah, right. You see, not only his counsel, but you're also saying that we should randomly – whatever I call a due page or I call down to Sangamon County, some people give it, some don't give it. The more practical way of doing that is to submit a FOIA request, because if you submit a FOIA request, they have to respond to it. It's not the same as a subpoena, but it forces them to give you a response. And when they give you the response, they should be following the law. They'd be redacting that information. And there is that one case I did cite in my brief that – it was unpublished opinion, so it's not presidential, but it's persuasive authority – that said there is no obligation to even issue FOIA requests or look for items in a county office that are not readily available to anybody. I'm just cheating my time, but I hope I answered everyone's question.  I don't have any. Okay. Thank you, Mr. Bryan. Ms. Salyer, good morning. Good morning. Good morning. May it please the Court, I'm Dee Salyer on behalf of Victor C. Singh. I would like to address your question, Your Honor, Justice Cable. Could you speak up? Okay. Sorry. About the property tax code notices 2210, 15, 2220, 2225, we respectfully disagree and maintain the reference shows that they were not complied with because when they are, due process is comported with. In this case, the issue is that none of the requirements of issuing these notices were even attempted. There was no effort. So under the controlling constitutional case law of Jones v. Flowers, belaying the United States Supreme Court, and then eventually the distinction between low two and DG Enterprise, which I'm sure, Your Honor, you're quite familiar with. The issue is there was zero effort made. These taxes were sold. Counsel, can I just clarify? You're saying if the statute was complied with, then due process is complied with. You would agree with that? Yes. If you comply with 2210, 15 and those diligence requirements to ascertain the whereabouts of the owner. But you started your argument. Yes. You confirmed that. You started your argument saying they complied with none of them? Yes. I say because they made no effort whatsoever to ascertain the whereabouts of the owners whose information was in the public record. And I disagree with the facts of the record stated by appellant. There was no Internet search. I do not recall I have no specific recollection that is the quotation to the record. My point is that this case is distinguished from the fact dependent due process analysis from low two and DG Enterprises. Because in this case, on cross motion for summary judgment, the uncontested affidavits, deposition testimony, and evidence on file clearly establish that there was zero effort made to locate the whereabouts of Victor C. Singh. Despite the fact that a diligent inquiry of dropping his name into an Internet search in a day and age that is distinguishable from the dates of low two, where all diligence was completed in low two. In low two, it's expressed in the opinion of that case that the tax purchaser in low two took all of the steps and made every possible directory search at the time. They didn't have the Internet like they knew it in 17. They made all those steps and it was proven in that evidence that they made the effort to find the whereabouts of the owner. Counsel, we cannot put Mr. Singh's name into Google to satisfy our curiosity whether it locates his address. Is there anything in the record that supports that if that were done, his address was readily apparent? No, there's not anything in the record. But it was used in that argument, correct? Excuse me? That argument was used. Well, it's not in the record because what is in the record is that it was not done. And when directly asked repeatedly at the deposition, the answer consistently was there's no specific recollection. There's no specific. It was admitted in the deposition testimony that the attorney for Singh that was conducting this required noticed diligence. Was it no specific recollection, but this is what I do every time I do a search? What she testified to at the deposition was is that she admitted at the deposition that she only did when he refers the reverse address search, she only put the address of the property from the vacant Stockton address into a reverse search, which nothing came up for Victor Singh. So she went to the recorded documents, which had the California notary on it for Victor Singh's signature. And she then put a 18 or 19-year-old recorded document address, which she admitted she knew was an old address for Victor C. Singh. Only the property addresses. And those are the only two addresses that were served, the vacant property and an 18-year-old property. And no effort was made to find Victor Singh. Assuming for the sake of analysis that no name search was done in the internet. Sure. How do we appear to say that there was insufficient due diligence if we don't know whether had that been done, anything would have been disclosed? Because his name was in the public record. His name was in the public record. Let's recall they purchased these taxes in September of 2016. Corey Katz Nelson, another attorney with 50 years experience, goes in to pay subsequent taxes. And he is refused to pay the subsequent year tax for 2015 because they are put on notice that someone paid that. They do nothing. They make no effort to find out who. It's in the public record. What do they do then? In 2016, they order a tax search. It's evident that somebody paid the 2015 taxes because it's not delinquent on the tax search. They file a petition. They do nothing. They wait 81 days into the notice-serving period until 8 days until those notices have to be served and they first start their effort. What happens? She does an online Google search. And again, right before her eyes, someone paid the 2015 taxes. They do nothing. There's no effort. They do put two addresses in from a vacant property and an 18-year-old address. And that's the beginning of the end of their effort. What should they have done? They should have investigated the public record the minute they went in there to pay and post those 2015 subsequent year taxes. And what would that process entail? Well, from a phone call. It took us a phone call. So that's not in the record, correct? Yes. We have Ms. Morrissey's affidavit. We're on cross-motion for summary judgment attached to the petition. That was my original question to you. Oh, sorry. I got the impression that you said, no, that was not part of the record. But that was my initial question. Oh, I apologize. That's okay. No. The other question I have, and then I'll stop interrupting, is are all of these transcripts part of the record, of the depositions? Yes. Okay. So they were attached to the summary judgment motion. Yes. Judge Bulloch had all of the transcripts, all of the affidavits. He had Gwen Henry, the DuPage County Treasurer's deposition testimony where she testified and we quoted to the page in our brief. When she was asked at her deposition, can somebody find out this? Yes. Yes, because it's public information. I've been doing this for over 20 years. It's a cornerstone to due diligence, and that's Payne v. Williams, a case that has not been responded to at all. That a cornerstone of due diligence is to inspect the property tax records. In this particular case, zero effort was made despite repeated knowledge that somebody had paid those taxes. So that's the due process. And in the due process, I want to make sure that we focus in on this reasonably calculated to appraise the property owner of notice. This is a cornerstone of the constitutional taking. You can't just say, I'm going to just do nothing, send notice to a vacant property, and rely on an 18-year-old's address, and then everything stacks up. We made the analogy in our brief. You know, it's similar to just mailing something to an address where you know it's going to go into the trash. This is so distinguishable from low to and DG Enterprises. In my opinion, it's unprecedented because it doesn't even come close to the diligence that the tax purchaser did in low to. And it doesn't touch the diligence in DG Enterprises. In DG Enterprises, they ascertained the whereabouts and took all efforts to ascertain where that owner resided. And 13 times, they attempted notice where they knew, based on their diligence, where that owner resided. Here, there was no effort at all to find Victor Singh's whereabouts. And that's supported by the uncontested summary judgment record. Their brief talks about this Rule 23 decision out of the First District, the white case, which I want to distinguish quickly for the court on this due process. Because what they don't want you to believe is that this is a public record that they could have gotten. That's a true red herring, and that's not true. We've proved that from our affidavits, and we also have an uncontested affidavit showing that, in fact, ZHY does submit FOIA requests if you have to. And they have in other proceedings, but it's a matter of a phone call, and you can get it within, I think, when Henry said three to eight days at the latest. That the treasurer would fork that information across the table. But this White v. Brooke is a Rule 23 out of the First District, and that's not applicable to this case. Because in that case, in Cook County, after the tax sale, that tax sale information was not in the public record. And what the court said is, is because those books had not been produced, and that data had not been assembled right off that sale into the Cook County clerk's records, it wasn't in the public record, versus the facts in this case. They knew from June, excuse me, September 2016 forward, on multiple occasions, they were shown information. They concealed that from the court, which then I'm going to trans, go over to my 2245.3. You know, there's no ground to overturn the court's finding under 2245.3, fraud in the procurement of the taxi, in my opinion, either on the uncontested evidence. You know, Ms. Parekes, an attorney, had a duty to the court to fully apprise on a prove-up hearing. It's not a piecemeal, routine matter. You're required to prove compliance with those notices to show that you've comported with the due process at the prove-up hearing. You don't stand up in front of the court and say that you searched for Victor Sing Sing when you know you haven't. And the record supports that allegation. Correct. Correct. At the prove-up hearing, Ms. Parekes advised that, attached to their application, Mr. Ryan testified at his deposition testimony that he signed the verified application but didn't look at it or review it before he signed it. It was a verified application that had numerous misstatements in it. It had misstatements that Victor Sing had signed for certified mail. It had misstatements about what certified mail was being sent and by whom. It had misstatements in the record attached to this verified application at C199, which is a portion of the application. It had on here proof of payment for the property tax years 2013, 2014, 2015, 2016. When the trial court called this to that attorney's attention at the prove-up hearing and said, wait a minute, I don't see your proofs of payments for 2015. It was incumbent upon that attorney to fully advise that court, oh, we know somebody paid, but it's our policy to never check tax records. Because that's exactly what Ms. Parekes stated in her deposition, that it's ZHY's policy to never check the property tax payment records. However, their verified application swore that they did. Because they know that the cornerstone to due diligence is to ascertain, in particular, per Payne v. Williams, when you're trying to find the property owner, you go and you know that somebody has paid these taxes after the sale. You have to go in there. You have to find out who's paying those property taxes and give them notice of the tax sale. In this case, right in that public record was Victor Sing's address at Rowan Heights, California. And it was just plainly ignored. Another misstatement to the court was that Ms. Parekes informed the court. In the public record, you're referring to the check, correct? Yes. Which is not available to the public without a FOIA request. No, we got it without a FOIA request, and that's supported by our position. You represent them, correct? I'm sorry? You represent the gentleman whose address you received, correct? Yes. When we were first retained, we filed this petition roughly a little over two and a half months after the tax deed issued. Our client found out, and the locks were changed at the property. Frederick Al called our client. I think Justice Heddle's question is this. Okay, the lawyer for the person whose tax record it is can probably call the treasurer's office and say, Hey, is the address of my client on this check? I think Justice Heddle's question is, can any Joe Schmo call Gwen Henry and get that same answer? Yes. Thank you, Justice Crowe. I apologize. Gwen Henry testified yes. She said in her deposition that anybody can call her office. And again, I think she said it was three to eight days at the latest that they would produce it. The defense ZHY has tried to muddle that water with of not being able to get the information is, No, no, no. You have to make a FOIA. You have to make a FOIA. Our point is they had ample time to make a FOIA if you did. Okay. They knew since June 2016. And that information was in the public record. And they were required under those strict due diligence guidelines to ascertain and to make an effort to ascertain the information located in the public record. And again, that's Payne v. Williams. In particular, in tax deed proceedings, when you're taking someone's house for the nonpayment of taxes and somebody's paying the taxes, you definitely have to find out who they are. And then that ties into that due process where we proved on cross motion for summary judgment that no effort was made whatsoever. And their whole MO, modus operandi, through these deposition testimonies is, I don't recall. I don't recall. I don't have any recollection. I don't know. I don't know. And now they want to stay here before this court. But we do know. Well, that opportunity came when the depositions and the testimony arise. So we say that there's no basis provided legally to support the reversal of the Honorable Judge Fullerton, who ultimately heard this case. And the last thing I'll just say quickly is that there were a total of six judges on this case from the time that this tax deed order issued all the way through, including one recusal in the middle of it, which wound up with Paul Fullerton. And the parties invited the court to decide this case. And our evidence supports affirming. Are there any other questions? No. Thank you. Mr. Brian Rebogle. Just initially, because I may have been under the gun, I just wanted to give you citations in the pages to make sure, correct the yes vote before. First of all, the answers to interrogatory number nine appear on C-1510 through 1511. And the citations I made to the depositions transcript are C-1953 through 1954, C-2016, and then C-2019 through C-2021. I apologize. Also, responding to your inquiry about DG Enterprises, I just looked it up. It was a Supreme Court decision in 2015. So that's far after the internet became accessible. And that court specifically held internet name search was not required. As I pointed out in the argument, a name search was definitely conducted. At a minimum, there's an answer to interrogatory saying one is done. For Judge Fullerton, the rule there wasn't one is disregarding the uncontroverted evidence. So at a minimum, there's a disputed factual question there should be sent down, especially since the importance of the judge placed on that name search seemed to be the focal point of his opinion. Because he ruled there was no name search. And there clearly was a name search, but if you believe there was some kind of inconsistency in the evidence, then it's a disputed question of whether one was done. And the judge actually, Judge Fullerton, made a credibility decision, which is not permissible on cross motions for summary judgment. Also, there is no evidence anywhere in the record that if you did put in Victor Singh's name in a name search, that we would get Victor Singh. Second thing is, let's say we do get a Victor Singh. Where are we going to get him? We're going to assume it's in California. That's another step. And there's no evidence that if we did put in Victor Singh and we found Victor Singh in California, somehow we would know that Victor Singh is associated with a property in Naperville, Illinois. Especially if there's evidence that he was residing in California for 20 years. So why would it be reasonable for us to even assume that we got a served Victor Singh in California? Mr. Wright, is it true that you did not or do not generally search to find out who paid the taxes? That's correct. We do generally do not. For several reasons. One, who paid the taxes is usually just an issue when the court is going to issue a tax deed to make sure all taxes were paid. And at that point in time, we give evidence that the taxes were all paid. Wouldn't it be a high likelihood that it would be the owner of the property that would have paid the taxes? Without a doubt. We probably assume it's going to be either the property owner or a mortgage company on behalf of it. Wouldn't that help you find and give notice to the property owner? No, because if the property owner, we believe our due diligence encompasses enough to get all the information we need. That would be just going through the hassle of getting a FOIA and getting some information that's held by a third-party vendor and treasurer's office is far beyond anything I've seen in any case law or anyone does. And it's considered to be an open-ended search. If the Supreme Court is saying you don't have to contact neighbors, you don't have to do an Internet search, you don't have to send regular mail, you don't have to do a posting at the house, why would we believe that we have to go through a multi-step process to get to some vendor that's farther down the line that may or may not have information? Thank you. If a person paid someone other than the owner... I'm sorry, what was that? If someone other than the owner paid those taxes in 2015, would you have to give them notice? Only if they have an interest in the property. So, for instance, if it was a bank and they paid the mortgage because they escrowed it, we would know that because there's a mortgage recorded, or we'd be doing other analysis to ascertain that party in interest. So all the parties that have an interest in the property that are entitled to notice would be ascertained by us, and we'd presume we would give them notice. So only if they paid the taxes. If you're asking me if it's some gratuitous person down the block that paid the taxes for them, we wouldn't have to give that person notice. Wouldn't they have an interest in the property? No, they do not. Just by paying the taxes, that doesn't give you an interest? They do not. They do not have an interest in the property in the sense of it being recorded, ownership, tenant occupying it. Those people have an interest in the property. So that's why it's not normally done. Or if it shows it's paid, it's presumably going to be the owner or somebody on behalf of the owner. And I take it that if the owner pays the property taxes in 2015, it's hit or miss whether his address is actually on the check. Some people don't have their addresses on the checks. Well, some people just pay by cash. So you don't have to provide an address to pay the property taxes. You do not. Treasurer just wants the money. Right. Pay cash, money order, certified checks are all acceptable as long as there's some payment. But here there is no question the address was on the check. According to what was produced by Mr. Singh's counsel, that is correct. The last thing I'd like to just point out, that is, I just believe that we've established that this case should be remanded with instructions that summary judgment be entered in our favor. And if there's any doubt, for instance, whether a name search conducted, then it should be remanded with instructions to conduct another entry here. But summary judgment in favor of seeing it against the EHY is inappropriate. Thank you very much for your time. Thank you, Mr. Ryan. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.